**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| V. | ) | I.D. No. 0611014197 |
| | ) | |
| MARK HOWARD | ) | |
| | ) | |
| Defendant. | ) | |

*Date Submitted: August 4, 2014*
*Date Decided: October 27, 2014*

**MEMORANDUM OPINION AND ORDER**

Cari Chapman, Esq., Department of Justice, Wilmington, Delaware. *Attorney for the State*.

Christopher S. Koyste, Esq., Wilmington, Delaware. *Attorney for Defendant*.

*Upon Consideration of Defendant's*
*Amended Motion for Postconviction Relief*
*Pursuant to Superior Court Criminal Rule 61*
***DENIED***

**DAVIS, J.**

On this 27th day of October 2014, the Court has considered the Amended Rule 61 Motion for Postconviction Relief filed by Defendant. After a review of the record in this case, it appears that:

**TRIAL, CONVICTION AND SENTENCING**

1.      Mr. Howard was a member of the same church as JW and her two sons, JK and BK (collectively, the "boys").[1]  Mr. Howard, JW, and the boys became friends.[2]  In late 2005 and early 2006, Mr. Howard and JK, then fourteen years old, began spending a significant

---

[1] *Howard v. State*, 981 A.2d 1172 *1 (Del. 2009).
[2] *Id.*

amount of time together.[3]  Specifically, Mr. Howard and JK would frequently go mountain biking.[4]

2.  Mr. Howard and the boys developed a relationship during the spring and summer of 2006.[5]  JK and BK began staying at Mr. Howard's home overnight.[6]  BK was twelve years old at the time.[7]  Mr. Howard expressed a desire to be a father figure to JK and BK, and encouraged the boys to call him "dad."[8]  JK testified that, during the spring of 2006, Mr. Howard promised that he would pay for him to attend private school, pay for his college education, and give him a car.[9]  JK also testified that Mr. Howard promised to designate JK and BK as the beneficiaries on his life insurance policy.[10]  Further, JK testified that Mr. Howard walked around his apartment in the nude, asked him questions about his sexual preferences, and discussed masturbation with him.[11]

3.  Mr. Howard denied walking around his apartment in the nude.[12]  Mr. Howard did however admit to walking naked from his bedroom to the bathroom while the boys were present.[13]  Mr. Howard also admits to telling JK that it was okay to masturbate and that everyone did it.[14]

4.  During the summer of 2006 Mr. Howard and JK began tracking their muscle growth by measuring various muscles for one another.[15]  JK alleges that Mr. Howard pulled

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] Trial Tr., 187:4-7, June 11, 2008.
[13] *Id.*
[14] *Howard,* 981 A.2d 1172 *1.
[15] *Id.* at *2.

2

down JK's pants and exposed his genitals on one occasion while measuring muscle growth.[16] In addition to tracking muscle growth, Mr. Howard and JK gave each other massages following their bike rides.[17] Mr. Howard claims that the massages were performed in order to remove lactic acid after mountain biking.[18] JK alleges that Mr. Howard pulled down JK's boxers and rubbed his buttocks on two separate occasions during these massages.[19] BK asserts that Howard massaged him on two occasions and rubbed BK's inner thighs near his penis.[20]

5.     Both JK and BK testified that Mr. Howard made inappropriate bets with them.[21] JK stated that Mr. Howard offered him twenty dollars on at least ten separate occasions to "moon ride".[22] According to JK, "moon ride" is the term that Mr. Howard used to describe riding a bicycle with one's bare buttocks exposed.[23] JK further testified that Mr. Howard dared JK to sit on his deck for a minute in the nude. On another occasion, Mr. Howard dared JK to perform ten pushups while naked on the deck.[24] JK also stated that Mr. Howard offered him money to sit naked on a rock in the middle of a creek and to swim across a river in the nude.[25] BK testified that Mr. Howard also offered him money to swim naked.[26] Both JK and BK said that they accepted the money from Mr. Howard in exchange for swimming in the nude.[27] According to the boys, Mr. Howard described this type of behavior as part of a normal father-son relationship, but he advised them not to tell anyone, because other people might get the wrong idea.[28]

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] Trial Tr., 26:23-27:1, 105:13-107:3, June 5, 2008.
[22] *Id.* at 27:2-28:7.
[23] *Id.* at 27:4-28:12.
[24] *Id.* at 29:1-6.
[25] *Id.* at 29:12-32:20.
[26] *Howard,* 981 A.2d 1172 *2.
[27] *Id.*
[28] *Id.*

6. On June 13, 2008, a jury convicted Mr. Howard of two counts of Sexual Solicitation of a Child, Unlawful Sexual Contact in the Second Degree, Attempted Sexual Contact in the Third Degree, and nine counts of Indecent Exposure in the First Degree. Mr. Howard was sentenced on August 1, 2008.

7. Mr. Howard filed a Notice of Appeal with the Supreme Court of Delaware on August 7, 2008. The Delaware Supreme Court opinion provides that Mr. Howard raised the following four claims of error on direct appeal: (1) 11 *Del. C.* § 1112A (Sexual Solicitation of a Child) violates the free speech guarantee of the First Amendment; (2) 11 *Del. C.* § 1103(e)(3) (defining "masturbation" as a prohibited sexual act) is void for vagueness; (3) all counts of the indictment were fatally defective due to lack of specificity; and (4) there was insufficient evidence to support a conviction on the Sexual Solicitation of a Child charges.[29] The Supreme Court affirmed Mr. Howard's conviction on September 22, 2009.

**MR. HOWARD'S RULE 61 MOTION AND CLAIMS FOR RELIEF**

8. On September 21, 2009, Mr. Howard timely filed a *pro se* motion for postconviction relief. On November 30, 2010, Mr. Howard's trial attorney ("Trial Counsel") filed an affidavit (the "Affidavit") in response to Mr. Howard's *pro se* Motion. On January 13, 2012, the Commissioner recommended a denial of all claims. Mr. Howard appealed the Commissioner's Findings of Fact and Recommendations on February 24, 2012. On February 28, 2012, the Superior Court adopted the Commissioner's recommendation and denied Mr. Howard's *pro se* motion for postconviction relief.

9. On August 19, 2013, the Supreme Court remanded this case to the Superior Court with instructions to appoint counsel and permit the filing of an amended motion for

---

[29] *Howard,* 981 A.2d 1172 *1.

postconviction relief. On December 12, this Court appointed Christopher S. Koyste, Esquire as counsel for Mr. Howard.

10. On May 5, 2014, Mr. Howard submitted the Amended Rule 61 Motion for Postconviction Relief (the "Amended Motion"). On May 27, 2014, the State filed its answer to the Amended Motion. Mr. Howard filed a reply to the State's answer on June 16, 2014.

11. In his Amended Motion, Mr. Howard raises seven grounds for relief: (1) failure by the trial court to offer a unanimity instruction; (2) failure by Trial Counsel to request a unanimity instruction; (3) failure by Trial Counsel to file a motion for reargument; (4) failure by Trial Counsel to file a bill of particulars; (5) failure by Trial Counsel to properly advise Mr. Howard of his right to testify; (6) failure by Trial Counsel to limit prior bad acts and request a limiting instruction; and (7) denial of Mr. Howard's constitutional right to a fair trial as a result of cumulative due process error.[30]

**LEGAL STANDARD UNDER SUPERIOR COURT CRIMINAL RULE 61**

12. Before addressing the merits of a Rule 61 motion for postconviction relief, the Court must first determine whether Mr. Howard has satisfied the procedural requirements of Superior Court Criminal Rule 61.[31] Rule 61(i) establishes four procedural bars to postconviction relief: (1) a motion for postconviction relief may not be filed more than one year after the judgment of conviction is final; (2) any ground for relief not asserted in a prior postconviction proceeding is barred; (3) any ground for relief not asserted in the proceedings leading to the judgment of conviction is barred; and (4) any ground for relief previously adjudicated in any proceeding is barred.[32]

---

[30] Def.'s Am. Mot. at i-ii.
[31] *Younger v. State,* 580 A.2d 552, 554 (Del. 1990).
[32] Super. Ct. Crim. R. 61(i).

5

13.     The procedural bars contained in Rule 61 (i)(1-4) may be rescinded only if there is a means by which to do so in the applicable subsection of Rule 61.[33]  Absent such relief, Rule 61 (i)(5) provides additional reprieve from the procedural bars described in Rule 61 (i)(1-3).[34] Under Rule 61 (i)(5), "[t]he bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[35]

**LEGAL ANALYSIS AND APPLICATION TO CLAIMS IN RULE 61 MOTION**

14.     Mr. Howard's original *pro se* postconviction motion was timely filed, not more than one year from the date of the judgment of conviction.  Because Mr. Howard's original motion was timely filed, and because the Supreme Court has granted Mr. Howard and court appointed counsel permission to file the Amended Motion, the Amended Motion is not procedurally barred under Rule 61 (i)(1).

15.     The Amended Motion is Mr. Howard's first motion for postconviction relief with the appointment of counsel, thereby avoiding the procedural bar of Rule 61 (i)(2).

16.     In his first claim, Mr. Howard asserts that he is entitled to relief because the trial court failed to offer a unanimity instruction. This argument was raised on direct appeal, and is not procedurally barred under Rule 61 (i)(3), however, it will be further discussed below with respect to the procedural bar of Rule 61 (i)(4).  Claims two through six of the Amended Motion all allege ineffective assistance of counsel.  Mr. Howard did not raise any of his claims related to ineffective assistance of counsel in the proceedings leading to the judgment of conviction.

---

[33] *State v. MacDonald,* 2007 WL 1378332 *4 (Del. Super., May 9, 2007).
[34] *Id.*
[35] Super. Ct. Crim. R. 61(i)(5).

6

However, because the Delaware Supreme Court has declined to hear these claims on direct appeal, the first opportunity to bring such a claim is on application for postconviction relief.[36]

17.     A claim of ineffective assistance of counsel may overcome the procedural bar set forth in Rule 61(i)(3) under Rule 61(i)(5), by qualifying as a constitutional violation that undermines the fundamental legality, reliability, integrity or fairness of a proceeding.[37]  Mere conclusory assertions of ineffectiveness of counsel are insufficient.  Instead, a movant must make concrete allegations of counsel's ineffectiveness in order to survive summary dismissal.[38] In his Amended Motion, Mr. Howard supports each of his claims alleging ineffective assistance of counsel with specific allegations.   The Court finds that Mr. Howard's allegations are not merely conclusory and will consider the merits of these claims.

18.     In his final claim, Mr. Howard alleges a denial of his constitutional right to a fair trial resulting from cumulative due process error.  Mr. Howard asserts that the cumulative effect of grounds one through six set forth in the Amended Motion deprived him of a fair trial.  This claim falls under the Rule 61(i)(5) exception to the Rule 61(i)(3) bar, as it alleges a constitutional violation that undermines the fundamental legality, reliability, integrity or fairness of a proceeding.

19.     In the footnotes of the Supreme Court opinion, the Court states -- "In his briefs [Mr.] Howard claims that it was plain error for the Superior Court to fail to give, *sua sponte*, a single theory unanimity jury instruction on the Sexual Solicitation charges.  At oral argument, [Mr.] Howard's counsel withdrew that argument, and we do not consider it."[39]  In the Amended Motion, Mr. Howard asserts that he never withdrew this claim at oral argument, and that the

---

[36] *State v. Gattis,* 1995 WL 790961 *3 (Del. Super., Dec. 28, 1995).
[37] *MacDonald,* 2007 WL 1378332 at *4.
[38] *Younger,* 580 A.2d 552, 556.
[39] *Howard,* 981 A.2d 1172, *3 n. 2.

7

Supreme Court mistook Mr. Howard's withdrawal of his insufficiency of evidence argument for the trial court's failure to give a unanimity instruction argument.[40] In their reply to Mr. Howard's Amended Motion, the State contends that the Supreme Court addressed Mr. Howard's juror unanimity instruction argument and found it to be without merit.[41]

20.     A review of the Supreme Court oral argument transcript reveals that the Court did in fact erroneously conclude that Mr. Howard withdrew his juror unanimity instruction argument. At oral argument, counsel for Mr. Howard stated, "[t]he second and main focus of my argument is *Probst* unanimity argument. And the third argument that I have, insufficient evidence I'm withdrawing because I realize I look at it too narrowly…"[42] Mr. Howard argues that due to this clear error, he was deprived of a just ruling on appeal, and is entitled to the interest of justice exception under Rule 61(i)(4).

21.     Rule 61(i)(4) provides that, "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice."[43] This claim was not formerly adjudicated; rather, it was mistakenly regarded as withdrawn and was not considered. Mr. Howard argues that the interest of justice exception is still applicable. In support of his argument, Mr. Howard relies on the Supreme Court's ruling in *Weedon v. State*. In *Weedon*, the Court determined the scope of the "interest of justice" exception, finding that there are two exceptions to the "law of case" doctrine.[44] The Supreme Court held that "the doctrine does not apply when the previous ruling was clearly in error or there has been an important change in

---

[40] Def.'s Am. Mot. at 12-13.
[41] State's Ans. to Def.'s Am. Mot. at 6.
[42] Tr. of Oral Argument at 1, *Howard*, 981 A.2d 1172 (Del. 2009).
[43] Super. Ct. Crim. R. 61(i)(4).
[44] *Weedon v. State*, 750 A.2d 521, 528 (Del. 2000).

circumstances, in particular, the factual basis for issues previously posed." It is evident from the oral argument transcript that Mr. Howard did not withdraw his claim that the trial court erred by failing to give a juror unanimity instruction. The Supreme Court's failure to consider this claim was done clearly in error. As such, the interest of justice exception will apply. The Amended Motion has overcome the procedural bars of Rule 61, and therefore, this Court will consider the merits of Mr. Howard's claims.

22. Where a defendant fails to request a specific jury instruction, a claim that the trial court erred by not offering the instruction is reviewed for plain error.[45] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[46] "Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[47]

23. "[A] general unanimity instruction typically suffices to insure that the jury is unanimous on the factual basis for a conviction."[48] A general unanimity instruction is inadequate when a case presents factors that could potentially confuse the jury.[49] The following three factors must be present in order to require that the court offer a single theory unanimity instruction: "(1) a jury is instructed that the commission of any one of several alternative actions

---

[45] *Dougherty v. State*, 21 A.3d 1, 3 (Del. 2011) (citing *Turner v. State*, 5 A.3d 612, 615 (Del. 2010) (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).

[46] *Turner v. State*, 5 A.3d 612, 615 (Del. 2010) (quoting *Wainwright*, 504 A.2d 1096, 1100 (Del. 1986); *Dutton v. State*, 452 A.2d 127, 146 (Del. 1982)).

[47] *Id.* (quoting *Wainwright*, 504 A.2d at 1100; *Bromwell v. State,* 427 A.2d 884, 893 n. 12 (Del. 1981)).

[48] *Dougherty*, 21 A.3d at 3.

[49] *Probst v. State*, 547 A.2d 114, 120 (Del. 1988).

would subject the defendant to criminal liability, (2) the actions are conceptually different[,] and (3) the State has presented evidence on each of the alternatives."[50]

24.    ***Ground One***:  Mr. Howard contends that the trial court committed reversible error by failing to offer, *sua sponte*, a single theory unanimity instruction.[51]  The trial court's jury instruction on sexual solicitation of a child included a recitation of both the sexual solicitation of a child statute and the prohibited sexual acts statute.[52]  Mr. Howard argues that both statutes established that the jury could find him guilty on alternative prohibited acts.[53]  Mr. Howard relies on the Delaware Supreme Court's ruling in *Probst* to support this argument.[54]  Mr. Howard further claims that the trial court was required to give a single theory unanimity instruction because the State presented and argued multiple conceptually different acts for each count of the indictment.[55]

25.    The State claims that this case is entirely distinguishable from *Probst*.[56]  The State argues that in *Probst*, there were two theories of liability presented by the State, each requiring proof of different elements and describing different conduct.[57]  The State contends that in the present case, the theory of liability was the same for each of the five sexual solicitation charges, and that there is no evidence of juror confusion as to which prohibited act was alleged to have been committed with respect to each sexual solicitation charge.[58]  In support of this contention,

---

[50] *Id.* at 121 (quoting *State v. Edwards*, 524 A.2d 648, 653 (Conn. App. Ct. 1987)).
[51] Def.'s Am. Mot. at 11.
[52] Trial Tr., 5:12-7:9, June 12, 2008.
[53] Def.'s Am. Mot. at 14.
[54] *Id.* at 13-14.
[55] *Id.* at 16.
[56] State's Ans. to Def.'s Am. Mot. at 10.
[57] *Id.*
[58] *Id.*

10

the State points to the fact that the jury only convicted Mr. Howard on two of the five sexual solicitation charges.[59]

26.     Trial Counsel does not address whether the trial court committed error by failing to offer a single theory unanimity instruction.  Mr. Howard's original *pro se* postconviction motion did not include this ground for relief, and Trial Counsel has only submitted an Affidavit in response to the original motion.

27.     After reviewing the parties' submissions and the record of the case, the Court finds that the trial court was not required to offer a single theory unanimity instruction.  As stated above, Mr. Howard relies on the decision in *Probst* to support his argument that such an instruction was necessary.  The *Probst* case involves a property dispute that led to a shooting incident between two neighbors, Ruth Ann Probst and Frank Walla, resulting in Ms. Probst facing charges.[60]  With regard to the charge of second degree assault, the State argued two theories of liability.[61]  First, the State argued that Ms. Probst shot Mr. Walla herself.[62]  Second, the State contended that Ms. Probst's brother, James Miller, shot Mr. Walla at the request of Ms. Probst.[63]  The jury was given instruction on both direct and accomplice liability.[64]  Ms. Probst was ultimately convicted of assault in the second degree.[65]  In *Probst*, the jury was not required to indicate whether they reached their verdict based on the theory of direct or accomplice liability.[66]  Therefore, the jury could potentially reach a guilty verdict with some jurors finding Ms. Probst guilty under the theory of accomplice liability, and others concluding that she was directly liable.

---

[59] *Id.*
[60] *Probst,* 547 A.2d at 115-16.
[61] *Id.* at 118.
[62] *Id.* at 117-18.
[63] *Id.* at 118.
[64] *Id.*
[65] *Id.* at 115.
[66] *Id.* at 120-21.

28.     In the present case, the State's single theory of liability on each charge of sexual solicitation of a minor is unequivocal and creates no potential for juror confusion. On four of the five counts of sexual solicitation, the State argued that Mr. Howard offered money to JK and BK if they would expose themselves.[67] As to the final count, the State argued that Mr. Howard asked BK if he wanted to take off his pants and allow Mr. Howard to make sure everything was okay down there.[68] On each of the five counts of sexual solicitation, Mr. Howard attempted to cause the same prohibited sexual act—nudity. Moreover, the acts presented and argued by the State were not conceptually different. With regard to the sexual solicitation charges, the evidence presented by the State showed that Mr. Howard solicited JK and BK to expose themselves, and he did so by making bets or offering assistance. These acts presented and argued by the State demonstrated coercive techniques employed by Mr. Howard as a means by which to convince JK and BK to expose themselves. Conceptually, these acts are not different.[69] The same is true regarding the acts presented and argued by the State with respect to all other counts of the indictment. The Court finds that the error complained of is not so clearly prejudicial to Mr. Howard's substantial rights as to jeopardize the fairness and integrity of the trial process.

29.     The standard used to evaluate a claim of ineffective assistance of counsel is the two-pronged test articulated by the United States Supreme Court in *Strickland v. Washington*, and adopted by the Delaware Supreme Court in *Albury v. State*.[70] Under *Strickland*, the defendant "must establish both (1) deficient performance by trial counsel and (2) prejudice

---

[67] *Howard,* 981 A.2d 1172 *3.
[68] *Id.*
[69] *See, Pierce v. State,* 911 A.2d 793, 798 (Del. 2006).
[70] *State v. Sykes*, 2014 WL 619503 *12 (Del. Super., Jan 21, 2014) (citing *Flamer v. State*, 585 A.2d 736, 754 (Del. 1990)); *State v. Gattis,* 1995 WL 790961 *3 (Del. Super., Dec. 28, 1995).

suffered as a result of the deficient performance."[71] Failure to establish either prong of the test

will result in a denial of the defendant's claim for relief.[72]

30.     In order to satisfy the first prong of the *Strickland* test, the defendant must

demonstrate that counsel's performance fell below an objective standard of reasonableness.[73]

There is no exact standard used to determine reasonably effective assistance of counsel, rather,

performance is measured under prevailing professional norms.[74] "Prevailing norms of practice as

reflected in American Bar Association standards and the like…are guides to determining what is

reasonable, but they are only guides."[75] In *Strickland*, the United States Supreme Court

recognized that there is more than one way for counsel to provide effective assistance in any

given case, noting that equally competent attorneys may tactically approach the same case in a

different manner.[76] Moreover, the movant must overcome a strong presumption that counsel's

performance was within the "wide range of reasonable professional assistance."[77]

31.     The second prong of the *Strickland* test requires that the defendant prove that it is

reasonably probable that, but for the mistakes of counsel, "the factfinder would have had a

reasonable doubt respecting guilt."[78] In *Strickland*, the United States Supreme Court defined

reasonable probability as "a probability sufficient to undermine confidence in the outcome."[79] In

determining whether the defendant suffered prejudice as a result of ineffective assistance of

counsel, this Court must consider the "totality of the evidence before the judge or jury."[80] The

showing of prejudice is essential to a claim of ineffective assistance of counsel, and thus, the

---

[71] *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).
[72] *Id.* (citing *Strickland*, 466 U.S. at 697).
[73] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).
[74] *Sykes*, 2014 WL 619503 at *13 (citing *Strickland*, 466 U.S. at 688).
[75] *Strickland*, 466 U.S. at 688.
[76] *Id.* at 689.
[77] *Gattis*, 1995 WL 790961 at *4 (citing *Strickland*, 466 U.S. at 689).
[78] *Strickland*, 466 U.S. at 695.
[79] *Id.* at 694.
[80] *Id.* at 695.

13

court in *Strickland* stated "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[81] Furthermore, "[i]f the defendant fails to 'state with particularity the nature of the prejudice experienced,' such failure is 'fatal to a claim of ineffective assistance of counsel.'"[82]

32.     ***Ground Two:***  Mr. Howard contends that Trial Counsel was ineffective for failing to request a single theory unanimity instruction on any of the charges.[83] Mr. Howard claims that the State presented multiple conceptually different acts with respect to each count of the indictment, and as such, a single theory unanimity instruction should have been applied to each count.[84]

33.     In his Affidavit, Trial Counsel agrees with Mr. Howard's second ground for relief and admits that a request should have been made for a unanimity instruction.[85] Trial Counsel asserts that because the term "prohibited sexual act" includes twelve different forms of conduct, and the jury was not given a single theory unanimity instruction, they were permitted to determine that a prohibited sexual act had occurred without all jurors agreeing as to which prohibited act had been committed.[86]

34.     The State's response to Mr. Howard's second ground for relief mirrors their response to his first claim. The State maintains that this case is entirely distinguishable from *Probst* and argues that a specific unanimity instruction was not necessary as this case presented no evidence of juror confusion in evaluating any of the charges.[87]

---

[81] *Id.* at 697.
[82] *Sykes*, 2014 WL 619503 at *13 (citing *Dawson v. State*, 673 A.2d 1186 at 1196 (Del. 1996).
[83] Def.'s Am. Mot. at 20.
[84] *Id.* at 21.
[85] Trial Counsel's Aff. at 1.
[86] *Id.* at 1-2.
[87] State's Ans. to Def.'s Am. Mot. at 10.

14

35.     After reviewing the parties' submissions and the record of the case, the Court finds that Mr. Howard has failed to show that Trial Counsel's conduct fell below an objective standard of reasonableness.  As stated above, this Court finds that the State did not present and argue conceptually different acts with respect to each charge of the indictment, and therefore, a specific unanimity instruction was not necessary.  Because this instruction was not necessary, Trial Counsel's failure to request such an instruction does not constitute ineffective assistance of counsel.

36.     ***Ground Three:*** Mr. Howard argues that Trial Counsel was ineffective for failing to file a motion for reargument before the Supreme Court with respect to his claim that the trial court erred by failing to issue a single theory unanimity instruction to the jury.[88]  Mr. Howard argues that the trial court's failure to offer a unanimity instruction was his strongest claim on appeal, and because the Supreme Court erroneously concluded that this claim was withdrawn at oral argument, he was deprived of a just ruling.[89]  Mr. Howard contends that there is a reasonable probability that he would have received a different result on direct appeal had counsel not failed to file a motion for reargument.[90]

37.     Trial Counsel's Affidavit does not address Mr. Howard's third claim.  Mr. Howard's original *pro se* postconviction motion did not include this ground for relief, and Trial Counsel has only submitted an Affidavit in response to the original motion.

38.     The State contends that even if reargument had been granted it is highly unlikely that the outcome of Mr. Howard's appeal would have been different.[91]

---

[88] Def.'s Am. Mot. at 22.
[89] *Id.* at 23-24.
[90] *Id.* at 24.
[91] State's Ans. to Def.'s Am. Mot. at 11.

15

39.    After consideration of the parties' submissions and the record of the case, the Court finds that Mr. Howard has failed to provide any factual basis to support his contention that but for counsel's failure to file a motion for reargument there is a reasonable probability that there would have been a different result on appeal.  Even if a motion for reargument was filed and granted, it is unlikely that the outcome would have changed.  As stated above, this Court has determined that the trial court was not required to offer a single theory unanimity instruction.  The record of the case does not demonstrate the existence of any potential for jury confusion.  Furthermore, Mr. Howard fails to establish the presence of all three factors necessary to require that the trial court offer a single theory unanimity instruction.  Mr. Howard has not substantiated his claim that had counsel moved for reargument it is reasonably probable that the outcome of his appeal would have been different.  Instead, Mr. Howard argues that mere consideration of the merits creates a reasonable probability that the outcome would have changed.  This Court finds that Mr. Howard has failed to establish actual prejudice under the second prong of the *Strickland* test.

40.    *Ground Four:*  Mr. Howard contends that Trial Counsel was ineffective for failing to file a bill of particulars.[92]  Mr. Howard argues that the indictment did not clearly identify the factual circumstances and alleged victim related to each charge.[93]  Mr. Howard claims that he suffered prejudice because JK and BK testified to a number of incidents involving bets, massages, and indecent exposures which outnumbered the counts in the indictment.[94]  Mr. Howard further contends that Trial Counsel's failure to request a bill of particulars led to Trial Counsel operating under the mistaken belief that Mr. Howard was indicted on charges related to

[92] Def.'s Am. Mot. at 25.
[93] *Id.* at 27.
[94] *Id.* at 29.

16

masturbation.[95]  Mr. Howard argues that this mistaken belief rendered Trial Counsel ineffective as he was unable to develop a sound trial strategy.[96]

41.    In his Affidavit, Trial Counsel characterizes this claim as the "flip side" of Mr. Howard's claim concerning counsel's ineffectiveness for failing to request a single theory unanimity charge.[97]  Trial Counsel explains that he conceded that a unanimity instruction should have been requested and given, thereby making it unnecessary to request a bill of particulars.[98] Simply put, Trial Counsel states "[t]he movant can't have it both ways."[99]

42.    In response, the State argues that there was no need for a bill of particulars because the indictment offered Mr. Howard sufficient notice of the crimes for which he was being charged.[100]  The State cites *Malloy v. State* in support of this argument.  In *Malloy*, the Delaware Supreme Court held that "[a] claim that the indictment was defective will be unavailing unless the indictment cannot, by the most liberal construction, be said to have imparted notice to [the defendant]."[101]

43.    On direct appeal, Mr. Howard argued that the indictment was fatally defective.[102] The Supreme Court addressed this issue and states the following in their opinion: "[Mr.] Howard was charged with five counts of Sexual Solicitation, but the State introduced evidence of ten. The indictment and trial record together establish what [Mr.] Howard was being prosecuted for, and are sufficient to bar subsequent prosecution for the same offenses."[103]  The Supreme Court has determined that the indictment provided Mr. Howard with sufficient notice of the crimes

---

[95] *Id.* at 28.
[96] *Id.* at 28-29.
[97] Trial Counsel's Aff. at 6.
[98] *Id.*
[99] *Id.*
[100] State's Ans. to Def.'s Am. Mot. at 11.
[101] *Malloy v. State*, 462 A.2d 1088, 1093 (Del. 1983).
[102] *Howard,* 981 A.2d 1172 *1.
[103] *Id.* at *4.

charged against him.  Therefore, Trial Counsel's decision to opt out of requesting a bill of particulars does not qualify as performance that falls below an objective standard of reasonableness.  This claim fails to establish the first prong of the *Strickland* test and, therefore, lacks merit.

44.      ***Ground Five:***  Mr. Howard contends that Trial Counsel was ineffective for failing to properly advise him of his right to testify or remain silent.[104]  Mr. Howard asserts that it is reasonable to infer that the jury's findings of guilt resulted from his admissions on the stand.[105]  Mr. Howard argues that had Trial Counsel properly advised him of the risks of testifying he would not have testified.[106]

45.      In response, Trial Counsel admits that he never advised Mr. Howard that offering money to children to expose themselves could constitute a prohibited sexual act, nor did he discuss with him the pros and cons of electing not to testify.  Trial Counsel admits that these discussions should have taken place.[107]

46.      In response, the State contends that Mr. Howard was properly advised of his right to testify or remain silent, because the court reviews this right with all defendants by way of a colloquy.[108]  The State asserts that Mr. Howard listened to the testimony of both JK and BK, and had sufficient knowledge of the evidence against him.[109]  Further, the State argues that Mr. Howard was well aware of the fact that nudity of a child constitutes a prohibited sexual act, as it was outlined in the State's opening statement.[110]  The State's position is that the jury found the testimony of JK and BK to be credible, and they were not persuaded by Mr. Howard's depiction

---

[104] Def.'s Am. Mot. at 31.
[105] *Id.* at 36.
[106] *Id.* at 35.
[107] Trial Counsel's Aff. at 5.
[108] State's Ans. to Def.'s Am. Mot. at 12.
[109] *Id.*
[110] *Id.* at 13.

of the events that took place.[111] Consequently, the State argues that Mr. Howard has failed to demonstrate that but for Trial Counsel's failure to properly advise him of his right to testify or remain silent there is a reasonable probability that the outcome of the trial would have changed.

47.     After consideration of the parties' submissions and the record of the case, the Court finds that Mr. Howard has failed to establish actual prejudice with respect to this claim. On direct appeal, the Supreme Court addressed whether there was sufficient evidence to convict Mr. Howard of sexual solicitation of a minor. In their analysis of this issue, the Court states "[t]he boys' testimony that [Mr.] Howard made those bets with them was sufficient to convict on those charges."[112] This suggests that the jury could have reasonably found Mr. Howard guilty on these charges whether he testified or not, because the testimony of JK and BK was sufficient to convict. Mr. Howard has failed to establish that but for Trial Counsel's errors the jury would have had a reasonable doubt respecting guilt.  This claim does not meet the requirements of the second prong of the *Strickland* test.

48.     *Ground Six:* Mr. Howard contends that Trial Counsel was ineffective for failing to limit prior bad acts and request a limiting instruction.[113] Mr. Howard argues that the testimony related to out of state and uncharged acts were extremely prejudicial and served only to show bad character.[114] Mr. Howard asserts that Trial Counsel's failure to request a limiting instruction allowed the jury to decide how to use the out of state and uncharged acts in reaching a verdict.[115]

---

[111] *Id.* at 14.
[112] *Howard,* 981 A.2d 1172 *5.
[113] Def.'s Am. Mot. at 37.
[114] *Id.* at 45.
[115] *Id.* at 46.

19

49.     In his Affidavit, Trial Counsel states that the testimony involving out of state acts was admissible as intertwined evidence; however, he admits that he should have requested a limiting instruction.[116]

50.     The State argues that the testimony regarding Mr. Howard's out of state conduct was *de minimis* and had no effect on the jury's verdict.[117]  The State contends that it is reasonable to infer that Trial Counsel may have deliberately chosen not to request a limiting instruction as part of his trial strategy; as such an instruction would have highlighted additional inappropriate behavior.[118]

51.     In *Getz v. State,* the Delaware Supreme Court explains that "evidence of prior criminal acts must meet the threshold test of relevancy, i.e., the uncharged misconduct must be logically related to the material facts of consequence in the case."[119]  D.R.E. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[120]  In *Getz,* the Supreme Court indicates that a limiting instruction should be given when evidence of prior bad acts is admitted.[121]  Mr. Howard's out of state and uncharged acts served to demonstrate that Mr. Howard systematically worked to establish a level of comfort between him and the boys.  The prior bad acts demonstrated that Mr. Howard's inappropriate behavior escalated over time, until it ultimately resulted in criminal conduct.  Although a limiting instruction should have been given, there is no evidence that the failure by counsel to request such an instruction affected the outcome of the proceedings.  Mr. Howard was

---

[116] Trial Counsel's Aff. at 2.
[117] State's Ans. to Def.'s Am. Mot. at 14.
[118] *Id.*
[119] *Getz v. State,* 538 A.2d 726, 731 (Del. 1988).
[120] D.R.E. 401.
[121] *Getz,* 538 A.2d at 734.

charged with five counts of sexual solicitation of a child, but only convicted of two counts. Had the jury improperly used the out of state and uncharged conduct in reaching their verdict, it is likely that they would have reached guilty verdicts on all counts of the indictment. Mr. Howard has failed to demonstrate that he suffered actual prejudice under the second prong of the *Strickland* test.

52. A claim that the cumulative effect of all errors denied a defendant of due process is reviewed for plain error.[122] As stated above, "[u]nder the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[123] Further, "[the Delaware Supreme Court] has held that the cumulative impact of errors in a trial may be the basis for reversing a conviction, even where one error, standing alone, would not be the basis for reversal."[124]

53. ***Ground Seven:*** Mr. Howard contends that his constitutional right to a fair trial was denied due to cumulative due process error.[125] Mr. Howard argues that the cumulative impact of claims one through six deprived him of a fair trial.[126]

54. In *Torres v. State*, the Delaware Supreme Court held that a cumulative error analysis is unwarranted when the court has determined that no error has occurred.[127] This Court has determined that Mr. Howard's preceding six claims are without merit, and therefore, a cumulative error analysis is not necessary.

---

[122] *Torres v. State*, 979 A.2d 1087, 1101 (Del. 2009).
[123] *Turner v. State*, 5 A.3d 612, 615 (Del. 2010) (quoting *Wainwright*, 504 A.2d 1096, 1100 (Del. 1986); *Dutton v. State*, 452 A.2d 127, 146 (Del. 1982)).
[124] *Torres*, 979 A.2d at 1101-02.
[125] Def.'s Am. Mot. at 47.
[126] *Id.* at 49.
[127] *Torres*, 979 A.2d at 1101-02.

21

55.    Accordingly, for the foregoing reasons, the Defendant's Amended Motion for Postconviction Relief Pursuant to Superior Court Criminal Rule 61 is **DENIED.**

**IT IS SO ORDERED.**


/s/ *Eric M. Davis*
Eric M. Davis, Judge


Original to Prothonotary

cc:    Cari Chapman, Esquire
       Christopher S. Koyste, Esquire
       Joseph A. Hurley, Esquire